UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BENITO AGUILAR<br><br>        Plaintiff,<br><br>        v.<br><br>KIM HOLLAND, et al.,<br><br>        Defendants. | CASE No. 1:13-cv-01356-LJO-DLB (PC)<br><br>FIRST SCREENING ORDER, DISMISSING PLAINTIFF'S COMPLAINT, WITH LEAVE TO AMEND<br><br>(ECF No. 1)<br><br>THIRTY-DAY DEADLINE |

**I.    Background**

       Plaintiff Benito Aguilar ("Plaintiff") is a prisoner in the custody of the California Department of Corrections and Rehabilitation ("CDCR"). Plaintiff is proceeding pro se and in forma pauperis in this civil action pursuant to 42 U.S.C. § 1983. Plaintiff filed his complaint on August 26, 2013, which is presently before the Court for screening.

       The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. *Id.* § 1915A(b)(1),(2).

       A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). While factual allegations are accepted as true, legal conclusions are not. *Id.*

**II.     Summary of Complaint**

Plaintiff is incarcerated at California Correction Institution ("CCI") in Tehachapi, California, where the events giving rise to this action occurred. Plaintiff names Kim Holland, Harold Tate, Khan Lee, T. Bingamon, A. Joaquin, S. Shiesha, and L.D. Zamora as defendants in this action.

Plaintiff alleges the following. On March 12, 2008, two unknown inmates attacked Plaintiff on Yard-D of Centinela State Prison. The inmates kicked and punched Plaintiff all over his body and knocked him to the ground. Correctional officers ended the attack with pepper spray. Nurses K. Aguilar and N. Garcia provided Plaintiff with medical attention. Nurse Aguilar poured some type of liquid on Plaintiff's head and asked him to calm down because he had sustained serious injuries. Plaintiff could not move on his own without the help of correctional officers and nurses. The nurses gave Plaintiff an ace-wrap to hold his dislocated or broken arm in place. The nurses attended to Plaintiff's injuries while he lay on the ground. Correctional officers and Nurse Aguilar placed Plaintiff on a cart and transported him to the prison's emergency room. Nurse Aguilar, the ER nurse, and a doctor attended to Plaintiff's injuries in the emergency room. Correction officers took pictures of Plaintiff's injuries.

Plaintiff was transferred to an outside hospital's emergency room. Plaintiff was placed in an isolated private room where he received medical attention. Medical staff determined that Plaintiff suffered a dislocated elbow and fracture in his left arm. A doctor put Plaintiff to sleep while his dislocated arm was put back into place. After Plaintiff woke up, nurses placed Plaintiff's arm in a cast and ace-wraps with a sling. The doctor told Plaintiff that he needed to be very careful and that he needed to see an orthopedic surgeon specialist and physical therapist as soon as possible. The doctor also told Plaintiff that if he continued to have pain and swelling, Plaintiff should return to the emergency room. Afterwards, the doctor gave the correctional

Case 1:13-cv-01356-LJO-DLB   Document 10   Filed 04/23/14   Page 3 of 12

officers instructions and paperwork for the prison doctors to follow regarding Plaintiff's injuries. Upon returning to the prison, Plaintiff was placed in administrative segregation single cell. Plaintiff could not sleep or lay down without serious pain and discomfort.

The following morning, Plaintiff told correctional officers about his pain. The correctional officers immediately transported Plaintiff to the prison emergency room for further evaluation and treatment. Nurse Salcido took Plaintiff's vital signs and weight. Plaintiffs told them that he could not sit down or sit upright comfortably so he had to lie down or lean on his right should because of the pain. A few minutes later, a prison doctor evaluated Plaintiff and gave him an injection to help relieve his pain. The doctor instructed Nurse Salcido to put some ace-wraps on Plaintiff's lower back and shoulder with the assistance of S. Hunter, a correctional officer. The doctor prescribed Tylenol for the pain told Plaintiff to inform correctional officers if the pain returned so that he could come back to the treatment center.

Plaintiff returned to administrative segregation where he continued to struggle with day to day activities, such as showering and using the restroom. Plaintiff's pain returned and he again informed correctional officers of his continuing pain. Plaintiff returned to the treatment center room at medical headquarters. A different doctor referred Plaintiff to a specialty orthopedic doctor in the city of El Centro, California. The same day, correctional officers transported Plaintiff for his treatment. The orthopedic surgeon viewed Plaintiff's X-rays and determined that he had suffered an injury to his left shoulder blade and a shoulder dislocation. He referred Plaintiff to see a physical therapist. Plaintiff requested to see a physical therapist numerous times but was continuously denied treatment. Plaintiff continued to receive pain medication to manage the pain from his injuries. Plaintiff continued to see the orthopedic specialist for treatment. Plaintiff continued to suffer pain and discomfort. Plaintiff did not receive the necessary medical tests to determine the cause of his pain or if he had suffered a concussion.

Plaintiff remained in administrative segregation until July 2008 when he was transferred to CTF-Soledad in Central California. Plaintiff informed the nurse at CTF-Soledad of his injuries and pain. Plaintiff was called to medical for random tests and follow-up for his injuries. Plaintiff

saw the prison's orthopedic surgeon specialist to receive X-rays and MRI scans of his injuries. The doctor examined Plaintiff's body and performed several orthopedic tests on him. The doctor prescribed medication for Plaintiff's pain.

Plaintiff was transferred to Ironwood State Prison in Blythe, California. Plaintiff notified the intake nurse of his injuries and he was directed to see a doctor. The doctor prescribed pain medication for Plaintiff and recommended that he see an orthopedic specialist for his injuries. From April 12, 2010 through November 29, 2010, Plaintiff was not able to see the orthopedic specialist. Plaintiff was told there was a process to see the orthopedic specialist. Plaintiff was placed in administrative segregation for administrative reasons.

Plaintiff was then transferred to CCI-Tehachapi. Plaintiff notified the intake nurse of his medical concerns and injuries from the attack. Plaintiff began to see Dr. Tate for his medical conditions and asthma. Plaintiff saw Dr. Tate numerous times and informed him about Plaintiff's injuries and pain. Dr. Tate prescribed Plaintiff pain medication and medication for inflammation. Plaintiff asked Dr. Tate to assist him in getting specialty doctors and for Dr. Tate to review his medical file. On or about December 21, 2011, Plaintiff saw Dr. Tate again and told him about Plaintiff's injuries and pain. Dr. Tate examined Plaintiff visually and physically. Dr. Tate told Plaintiff that if he continued to suffer pain, he should tell Dr. Tate in thirty days. On January 23 or 24, 2011, Plaintiff informed Dr. Tate that he was still experiencing pain. Plaintiff asked Dr. Tate to refer him to an orthopedic or a chiropractic specialist to receive special attention for his injuries.

Dr. Tate told Plaintiff that the thing they needed to worry about was Plaintiff's stomach and that he would keep Plaintiff on the pain medication. Dr. Tate examined Plaintiff's injuries by measuring his arms and shoulders. Dr. Tate told Plaintiff that from the looks of it there was nothing wrong with Plaintiff's arm. Dr. Tate asked Plaintiff if it hurt when he touched Plaintiff's shoulder. Plaintiff said, "Ouch-ouch it hurts there," when Dr. Tate touched his shoulder. Plaintiff told Dr. Tate that he could not lift his left arm without pain, discomfort, and a popping noise. Dr. Tate said that Plaintiff's pain will only get worse with age and that he can't do anything to fix it. Plaintiff told Dr. Tate that he wanted to see a physical therapist. Dr. Tate told Plaintiff that

physical therapy would not help and that it was already too late for physical therapy.

In February 2012, Plaintiff returned to see Dr. Tate. Plaintiff again requested a specialist but Dr. Tate repeated what he had previously told Plaintiff. Plaintiff told Dr. Tate that he would bring a complaint against him for not addressing Plaintiff's medical concerns. Dr. Tate decided to write Plaintiff up on a CDC-128. Plaintiff did not see Dr. Tate anymore for his medical visits. Plaintiff was schedule to see different doctors because of his complaint against Dr. Tate.

On March 21, 2012, correctional officers Avila and Chacon came to Plaintiff's cell to tell him to get ready for his medical appointment and that they would be back to pick him up. Officers Avila and Chacon never came back to pick up Plaintiff. As a result, Plaintiff had to wait eighteen days to reschedule an appointment. On April 18, 2010, Plaintiff saw a nurse and explained his injuries and medical concerns. The nurse asked Plaintiff what he wanted. She told Plaintiff that the doctors aren't God and that they couldn't fix his health issues. After hearing the nurse's comment, correctional officer Daniels and his partner ended the visit because Plaintiff wasn't getting anywhere with the nurse. Plaintiff was scheduled to see Dr. Allen on April 25, 2012. Plaintiff told Dr. Allen about his injuries and pain. Dr. Allen recommended that Plaintiff have a consultation with an orthopedic specialist.

On May 21, 2012, Plaintiff saw Dr. Lei, an orthopedic specialist. Dr. Lei performed tests on Plaintiff and had more X-rays taken at his office. Dr. Lei was upset that the prison did not send Plaintiff's medical file with him. Dr. Lei recommended that Plaintiff receive a MRI and a neurological consultation. Dr. Lei told Plaintiff that he would see him again after the tests.

On May 23, 2012, Plaintiff had a follow-up medical appointment with Dr. K. Lee at the prison. Plaintiff told Dr. Lee that an orthopedic surgeon had recommended a MRI for his shoulder and a neurological consultation. Dr. Lee looked annoyed upon hearing this information and ignored Plaintiff's request. Plaintiff told Dr. Lee that he felt dizzy and weak and felt like he was going to pass out from his injuries. Dr. Lee replied that he would order Plaintiff's previous MRIs and look at the results. Dr. Lee performed some tests on Plaintiff's body and said he understood why Plaintiff still suffered pain and discomfort from his injuries. Dr. Lee gave Plaintiff an

injection in his shoulder to help with the pain.  Dr. Lee said that he would see Plaintiff again in thirty days to check on him.  Plaintiff returned to his cell and fell into a deep sleep from the pain injection.  One hour later, correctional officers returned to Plaintiff's cell to take him back to see Dr. Lee because Plaintiff had filed a 602 appeal for medical care.  Plaintiff told Dr. Lee that the injection put him to sleep and Dr. Lee replied that Plaintiff should see a doctor because that was not normal.  Plaintiff again explained his medical conditions to Dr. Lee.  Dr. Lee replied that he would see Plaintiff in thirty days.

Thirty days later, Plaintiff returned to see Dr. Lee.  Plaintiff told Dr. Lee that he continued to sleep after the pain injection.  Dr. Lee still did not have Plaintiff's MRIs.  Plaintiff asked Dr. Lee to take new MRIs, CT-scans, or X-rays.  Dr. Lee replied that they had already spent over $5,000 on Plaintiff's treatment and MRIs.  Plaintiff felt that Dr. Lee did not want to help Plaintiff with his medical problems.  Dr. Lee told Plaintiff that his left elbow did not heal properly after the injury and that the injury would continue to bother Plaintiff into the future.  Dr. Lee again told Plaintiff that he would see him thirty days later.  On July 2, 2010, Plaintiff saw the doctor again and explained his pain and injuries.  Again, the doctors failed to give Plaintiff adequate medical treatment for his injuries.

Plaintiff informed Dr. Tate, Dr. Allen, and Dr. Lee about his injuries and pain on numerous occasions.  He also explained to them that the pain medication was not helping.  Plaintiff submitted another 602 medical treatment appeals form.  On August 13, 2012, Plaintiff saw a nurse for his health concerns.  Plaintiff told the nurse that he had seen an orthopedic surgeon who recommended MRI scans and a neurological consult.  The nurse replied that she would look into and that Plaintiff would see a doctor in a few days.

On August 15, 2012, Plaintiff saw Dr. Bingamon for the first time.  Plaintiff told Dr. Bingamon about his continued pain from his shoulder injury.  Dr. Bingamon assessed Plaintiff's injuries visually and physically.  Dr. Bingamon said he could not review Plaintiff's medical history at that time because the computer system was not in service due to systematic problems.  He told Plaintiff that he would reschedule a visit to go over Plaintiff's medical history.  As of

August 18, 2012, Plaintiff still did not have his follow-up visit. One hundred and eleven days passed from Plaintiff's last doctor line. The doctors at CCI failed to give Plaintiff proper medical care.

On December 5, 2012, Plaintiff saw Dr. Lee for medical treatment. Plaintiff reminded Dr. Lee of his injuries and that nothing had been done to fix them. On December 13, 2012, Plaintiff saw Dr. Lee again for his asthma condition and injuries. Plaintiff received an injection in his shoulder to help with the pain. Plaintiff informed Dr. Lee that he experienced pain in his shoulder if he tried to exercise or lift things. Plaintiff also experienced dizziness and fatigue as a result of his injuries. Plaintiff told Dr. Lee that his injuries cause him stress on a daily basis. Dr. Lee told Plaintiff that he would recommend Plaintiff for a MRI, neurological consultation, and physical therapy at the weekly administration meeting.

Plaintiff has exhausted his administrative appeals. Defendants A. Joaquin, S. Shiesha, and L.D. Zamora all denied his appeals for medical treatment. To date, Plaintiff has still not received the proper medical treatment for his injuries.

Plaintiff asserts violations of the First, Eighth, and Fourteenth Amendments. Plaintiff requests injunctive relief and compensatory and punitive damages.

**III. Analysis**

    A.    <u>Eighth Amendment—Medical Deliberate Indifference</u>

Plaintiff raises claims under Section 1983 for violation of the Eighth Amendment's prohibition against cruel and unusual punishments. To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison conditions must involve "the wanton and unnecessary infliction of pain." *Rhodes v. Chapman,* 452 U.S. 337, 347 (1981). A prisoner's claim does not rise to the level of an Eighth Amendment violation unless (1) "the prison official deprived the prisoner of the 'minimal civilized measure of life's necessities,'" and (2) "the prison official 'acted with deliberate indifference in doing so.'" *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002) (citation omitted)). In order to find

7

a prison official liable under the Eighth Amendment for denying humane conditions of confinement within a prison, the official must know "that inmates face a substantial risk of serious harm and disregard[] that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994).

To maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show (1) a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain, and (2) a deliberately indifferent response by defendant. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). The deliberate indifference standard is met by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. *Id.* The failure to respond to a prisoner's complaints of pain can be sufficient to support an Eighth Amendment claim. *Snow v. McDaniel*, 681 F.3d 978, 990 (9th Cir. 2012); *Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002). However, deliberate indifference must be shown and it is a high legal standard. *Toguchi*, 391 F.3d at 1060 (quotation marks omitted). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Id.* at 1057 (quoting Farmer, 511 U.S. at 837). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" *Id.* (quoting *Gibson v. Cnty. of Washoe, Nev.*, 290 F.3d 1175, 1188 (9th Cir. 2002)).

"A difference of opinion between a physician and the prisoner - or between medical professionals - concerning what medical care is appropriate does not amount to deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 987 (9th Cir. 2012) (citing *Sanchez v. Vild,* 891 F.2d 240, 242 (9th Cir. 1989)), overruled in part on other grounds, *Peralta v. Dillard*, 744F.3d 1046 (9th Cir. 2014); *Wilhelm v. Rotman*, 680 F.3d 1113, 1122-23 (9th Cir. 2012) (citing *Jackson*

8

*v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1986)). Rather, Plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to [his] health." *Snow*, 681 F.3d at 988 (citing Jackson, 90 F.3d at 332) (internal quotation marks omitted).

Here, Plaintiff fails to state a claim for medical deliberate indifference against any defendants. The Court recognizes Plaintiff's continuing pain, however, Plaintiff's allegations against defendants do not rise to the high legal standard required to constitute deliberate indifference. *Toguchi*, 391 F.3d at 1060. Defendants repeatedly examined Plaintiff and treated him with pain medication for his injuries. Although Plaintiff alleges that defendants incorrectly treated Plaintiff's injuries, which caused him serious pain, medical malpractice does not become a constitutional violation merely because the victim is a prisoner. *Estelle v. Gamble,* 429 U.S. 97, 106 (1976). Plaintiff alleges that Dr. Lei, an orthopedic specialist, recommended a MRI and neurological consultation for his injuries and that defendants denied Plaintiff this treatment. However, difference of opinion between a physician and the prisoner or between medical professionals concerning what medical care is appropriate does not amount to deliberate indifference. *Snow,* 681 F.3d at 987. Accordingly, Plaintiff fails to state any claims for medical deliberate indifference to support an Eighth Amendment claim.

B.    <u>State Law Claims—Medical Malpractice</u>

California's Tort Claims Act requires that a tort claim against a public entity or its employees be presented to the California Victim Compensation and Government Claims Board, formerly known as the State Board of Control, no more than six months after the cause of action accrues. Cal. Gov't Code §§ 905.2, 910, 911.2, 945.4, 950-950.2. Presentation of a written claim, and action on or rejection of the claim, are conditions precedent to suit. *State v. Superior Court of Kings Cnty. (Bodde)*, 32 Cal. 4th 1234, 1245 (2004); *Mangold v. Cal. Pub. Utils. Comm'n*, 67 F.3d 1470, 1477 (9th Cir. 1995). To state a tort claim against a public employee, a plaintiff must

allege compliance with the Tort Claims Act. *State v. Superior Court*, 32 Cal.4th at 1245; *Mangold*, 67 F.3d at 1477; *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 627 (9th Cir. 1988).

Plaintiff has not alleged compliance with the Tort Claims Act and therefore fails to state a claim for medical malpractice against any defendants.

C.     Supervisory Liability

Under section 1983, Plaintiff must link the named defendants to the participation in the violation at issue. *Iqbal*, 556 U.S. at 676-77, 129 S.Ct. at 1948-49; *Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1020-21 (9th Cir. 2010); *Ewing v. City of Stockton*, 588 F.3d 1218, 1235 (9th Cir. 2009); *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). Liability may not be imposed on supervisory personnel under the theory of respondeat superior, *Iqbal*, 556 U.S. at 676-77, 129 S.Ct. at 1948-49; *Simmons*, 609 F.3d at 1020-21; Ewing, 588 F.3d at 1235; *Jones*, 297 F.3d at 934, and as administrators, Defendants may only be held liable if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them," *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *accord Starr v. Baca*, 652 F.3d 1202, 1205-08 (9th Cir. 2011), cert. denied, 132 S.Ct. 2101 (2012); *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009); *Preschooler II v. Clark Cnty. Sch. Bd. of Trs.*, 479 F.3d 1175, 1182 (9th Cir. 2007); *Harris v. Roderick*, 126 F.3d 1189, 1204 (9th Cir. 1997). Some culpable action or inaction must be attributable to Defendants and while the creation or enforcement of, or acquiescence in, an unconstitutional policy, may support a claim, the policy must have been the moving force behind the violation. *Starr*, 652 F.3d at 1205; Jeffers v. Gomez, 267 F.3d 895, 914-15 (9th Cir. 2001); *Redman v. Cnty. of San Diego*, 942 F.2d 1435, 1446-47 (9th Cir. 1991); *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989).

Defendant Holland (Warden) was not present for any of the incidents Plaintiff alleges. Plaintiff's complaint lists Defendant Holland's involvement only as being responsible as the Warden for protecting prisoners. Plaintiff has failed to allege that Defendant Holland participated, directed, or knew of the violations and failed to act to prevent them. Accordingly, Plaintiff has not

stated any claims against Defendant Holland.

**IV.     Conclusion and Order**

Plaintiff's complaint fails to state any cognizable federal claims against any defendants. The Court will provide Plaintiff with an opportunity to file an amended complaint curing the deficiencies identified by the Court in this order. *Noll v. Carlson*, 809 F.2d 1446, 1448-49 (9th Cir. 1987). Plaintiff may not change the nature of this suit by adding new, unrelated claims in his amended complaint. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints). Plaintiff is further advised that the Court cannot direct the United States Marshal to effect service of process for any cognizable claims in an amended complaint until Plaintiff is able to provide the identity of at least one defendant.

If Plaintiff decides to amend, Plaintiff's amended complaint should be brief, Fed. R. Civ. P. 8(a), but must state what each named defendant did that led to the deprivation of Plaintiff's constitutional or other federal rights. *See Iqbal*, 556 U.S. at 678. Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.

Finally, Plaintiff is advised that an amended complaint supersedes the original complaint, *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997) overruled in part on other grounds, *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (en banc); *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987), and must be "complete in itself without reference to the prior or superseded pleading," Local Rule 220.

Accordingly, it is HEREBY ORDERED that:

1.     The Clerk's Office shall send Plaintiff a complaint form;

2.     Plaintiff's complaint is dismissed for failure to state a claim, with leave to file an amended complaint within thirty (30) days from the date of service of this order;

3.     Plaintiff may not add any new, unrelated claims to this action via the first amended complaint and any attempt to do so may result in an order striking the first amended complaint; and

4. If Plaintiff fails to file an amended complaint in compliance with this order, this action will be dismissed, with prejudice, for failure to state a claim.

IT IS SO ORDERED.

Dated: **April 23, 2014** /s/ Dennis L. Beck
UNITED STATES MAGISTRATE JUDGE