UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BENITO AGUILAR, <br><br>            Plaintiff, <br><br>      v. <br><br> KIM HOLLAND, et al., <br><br>            Defendants. | CASE No. 1:13-cv-01356-LJO-DLB (PC) <br><br> SECOND SCREENING ORDER, STRIKING PLAINTIFF'S SECOND AMENDED COMPLAINT, WITH LEAVE TO AMEND <br> [ECF No. 21] <br><br> THIRTY-DAY DEADLINE |

**I.   Background**

Plaintiff Benito Aguilar ("Plaintiff") is a prisoner in the custody of the California Department of Corrections and Rehabilitation ("CDCR"). Plaintiff is proceeding pro se and in forma pauperis in this civil action pursuant to 42 U.S.C. § 1983. Plaintiff filed his complaint on August 26, 2013. On April 23, 2014, the Court screened the complaint and dismissed it with leave to amend. On May 22, 2014, Plaintiff filed a First Amended Complaint. On October 2, 2014, Plaintiff moved for leave to file a Second Amended Complaint, and the Court granted Plaintiff's motion on October 15, 2014. On November 17, 2014, Plaintiff filed a Second Amended Complaint, which is presently before the Court for screening.

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. *Id.* § 1915A(b)(1),(2).

A complaint must contain "a short and plain statement of the claim showing that the

pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). While factual allegations are accepted as true, legal conclusions are not. *Id.*

## II.     Original and Amended Complaint

### A.     Original Complaint

In his original complaint, Plaintiff brought claims concerning events which occurred while Plaintiff was incarcerated at California Correction Institution ("CCI") in Tehachapi, California. Plaintiff named Kim Holland, Harold Tate, Khan Lee, T. Bingamon, A. Joaquin, S. Shiesha, and L.D. Zamora as Defendants.

Plaintiff stated that on March 12, 2008, two unknown inmates attacked him on Yard-D of Centinela State Prison. The inmates kicked and punched Plaintiff all over his body and knocked him to the ground. Medical staff determined that Plaintiff suffered a dislocated elbow and fracture in his left arm. Since that time, Plaintiff has continued to experience pain for which he has received medical care. Plaintiff was transferred to various institutions and received medical care at those facilities.

Plaintiff was transferred back to CCI-Tehachapi in 2011. Plaintiff began to see Dr. Tate for his medical conditions and asthma. Plaintiff saw Dr. Tate numerous times and informed him about his injuries and pain. Plaintiff complained to Dr. Tate that he could not lift his left arm without pain, discomfort, and a popping noise. Dr. Tate said that Plaintiff's pain will only get worse with age and that he couldn't do anything to fix it. Plaintiff told Dr. Tate that he wanted to see a physical therapist. Dr. Tate told Plaintiff that physical therapy would not help in that it was already too late for physical therapy.

In February 2012, Plaintiff returned to see Dr. Tate. Plaintiff again requested a specialist but Dr. Tate repeated what he had previously told Plaintiff. Plaintiff told Dr. Tate that he would

bring a complaint against him for not addressing Plaintiff's medical concerns. Dr. Tate decided to write Plaintiff up on a CDC-128. Plaintiff did not see Dr. Tate anymore for his medical visits. Plaintiff was scheduled to see different doctors because of his complaint against Dr. Tate.

Plaintiff alleged that on March 21, 2012, correctional officers Avila and Chacon came to Plaintiff's cell to tell him to get ready for his medical appointment and that they would be back to pick him up. Officers Avila and Chacon never came back to pick up Plaintiff. As a result, Plaintiff had to wait eighteen days to reschedule an appointment. On April 18, 2012, Plaintiff saw a nurse and explained his injuries and medical concerns. The nurse asked Plaintiff what he wanted. She told Plaintiff that the doctors aren't God and that they couldn't fix his health issues. After hearing the nurse's comment, correctional officer Daniels and his partner ended the visit because Plaintiff wasn't getting anywhere with the nurse. Plaintiff was scheduled to see Dr. Allen on April 25, 2012. Plaintiff told Dr. Allen about his injuries and pain. Dr. Allen recommended that Plaintiff have a consultation with an orthopedic specialist.

On May 21, 2012, Plaintiff saw Dr. Lei, an orthopedic specialist. Dr. Lei performed tests on Plaintiff and had more X-rays taken at his office. Dr. Lei was upset that the prison did not send Plaintiff's medical file with him. Dr. Lei recommended that Plaintiff receive an MRI and a neurological consultation. Dr. Lei told Plaintiff that he would see him again after the tests.

On May 23, 2012, Plaintiff had a follow-up medical appointment with Dr. K. Lee at the prison. Plaintiff told Dr. Lee that an orthopedic surgeon had recommended an MRI for his shoulder and a neurological consultation. Dr. Lee looked annoyed upon hearing this information and ignored Plaintiff's request. Plaintiff told Dr. Lee that he felt dizzy and weak and felt like he was going to pass out from his injuries. Dr. Lee replied that he would order Plaintiff's previous MRIs and look at the results. Dr. Lee performed some tests on Plaintiff's body and said he understood why Plaintiff still suffered pain and discomfort from his injuries. Dr. Lee gave Plaintiff an injection in his shoulder to help with the pain. Dr. Lee said that he would see Plaintiff again in thirty days to check on him. Plaintiff returned to his cell and fell into a deep sleep from the pain injection. One hour later, correctional officers returned to Plaintiff's cell to take him back to see Dr. Lee because Plaintiff had filed a 602 appeal for medical care. Plaintiff told Dr. Lee that

the injection put him to sleep and Dr. Lee replied that Plaintiff should see a doctor because that was not normal. Plaintiff again explained his medical conditions to Dr. Lee. Dr. Lee replied that he would see Plaintiff in thirty days.

Thirty days later, Plaintiff returned to see Dr. Lee. Plaintiff told Dr. Lee that he continued to sleep after the pain injection. Dr. Lee still did not have Plaintiff's MRIs. Plaintiff asked Dr. Lee to take new MRIs, CT-scans, or X-rays. Dr. Lee replied that they had already spent over $5,000 on Plaintiff's treatment and MRIs. Plaintiff felt that Dr. Lee did not want to help Plaintiff with his medical problems. Dr. Lee told Plaintiff that his left elbow did not heal properly after the injury and that the injury would continue to bother Plaintiff into the future. Dr. Lee again told Plaintiff that he would see him thirty days later. On July 2, 2010, Plaintiff saw the doctor again and explained his pain and injuries. Again, the doctors failed to give Plaintiff adequate medical treatment for his injuries.

Plaintiff informed Dr. Tate, Dr. Allen, and Dr. Lee about his left arm injuries and pain on numerous occasions. He also explained to them that the pain medication was not helping. Plaintiff submitted another 602 medical treatment appeals form. On August 13, 2012, Plaintiff saw a nurse for his health concerns. Plaintiff told the nurse that he had seen an orthopedic surgeon who recommended MRI scans and a neurological consult. The nurse replied that she would look into it and that Plaintiff would see a doctor in a few days.

On August 15, 2012, Plaintiff saw Dr. Bingamon for the first time. Plaintiff told Dr. Bingamon about his continued pain from his shoulder injury. Dr. Bingamon assessed Plaintiff's injuries visually and physically. Dr. Bingamon said he could not review Plaintiff's medical history at that time because the computer system was not in service due to systematic problems. He told Plaintiff that he would reschedule a visit to go over Plaintiff's medical history. As of August 18, 2012, Plaintiff still did not have his follow-up visit. One hundred and eleven days passed from Plaintiff's last doctor line. The doctors at CCI failed to give Plaintiff proper medical care.

On December 5, 2012, Plaintiff saw Dr. Lee for medical treatment. Plaintiff reminded Dr. Lee of his injuries and that nothing had been done to fix them. On December 13, 2012, Plaintiff

saw Dr. Lee again. Plaintiff received an injection in his shoulder to help with the pain. Plaintiff informed Dr. Lee that he experienced pain in his shoulder if he tried to exercise or lift things. Plaintiff also experienced dizziness and fatigue as a result of his injuries. Plaintiff told Dr. Lee that his injuries cause him stress on a daily basis. Dr. Lee told Plaintiff that he would recommend Plaintiff for a MRI, neurological consultation, and physical therapy at the weekly administration meeting.

Plaintiff has exhausted his administrative appeals. Defendants A. Joaquin, S. Shiesha, and L.D. Zamora all denied his appeals for medical treatment.

Plaintiff asserted violations of the First, Eighth, and Fourteenth Amendments. Plaintiff requested injunctive relief and compensatory and punitive damages.

The Court screened the complaint and dismissed it with leave to amend for failure to state a claim. Plaintiff was advised that he could not add any new, unrelated claims to the action via the amended complaint and any attempt to do so could result in an order striking the amended complaint, and dismissal of the action with prejudice.

B.      Amended Complaint

In his Second Amended Complaint, Plaintiff completely abandons the claims he presented in his original complaint. Plaintiff does not present any claims concerning his arm and shoulder injuries, and the alleged medical care or lack thereof that he received in 2011 through 2012.

In the Court's order dismissing his original complaint, the Court explained that an amended complaint supersedes the original complaint, *Lacey v. Maricopa County*, 693 F.3d 896, 907 n.1 (9th Cir. 2012) (en banc), and must be "complete in itself without reference to the prior or superseded pleading," Local Rule 220.

In the Second Amended Complaint, Plaintiff brings new and unrelated claims concerning a left leg injury sustained in July of 2013. Plaintiff alleges that Defendant Lee failed to provide him with adequate medical care concerning his left leg. Plaintiff complains that Defendant Tate failed to give him medical care concerning his shoulder following surgery which had been performed on July 10, 2013. He further complains that Defendant Tate took away his asthma treatment inhalers for no reason on October 1, 2013. He claims he appealed the issue to Defendant Holland. Further,

5

... 

he complains that on January 9, 2014, Defendant Tate threatened to write him up if he continued to request inhalers.

On January 29, 2014, Plaintiff called "man down" due to a flare-up of his asthma condition. Plaintiff was taken to the medical clinic. Plaintiff utilized his inhalers, but it took several hours for his condition to return to normal. Plaintiff was taken to a holding cell and Nurse Nagandi took his used inhaler and did not give him a new one.

On February 7 or 8, 2014, Plaintiff again called "man down" for an asthma attack. Plaintiff was seen by a nurse who gave him an injection.

On February 12, 2014, Plaintiff was seen again by Defendant Tate. Plaintiff asked for his inhalers, but Tate denied his requests and again threatened Plaintiff that he would write him up if he persisted in his requests.

On April 10, 2014, Plaintiff was seen by physician assistant Allen. Plaintiff went over his medical problems. Allen said she would look into it and call Plaintiff back but she did not.

On May 29, 2014, Plaintiff went to Dr. Tate for a follow-up visit. Plaintiff complained of his shoulder and arm pain and his asthma problems. He requested a cortisone shot. He requested the recommendations of previous doctors be accommodated. Defendant Tate denied all of his requests including effective pain medications.

On June 23, 2014, Plaintiff was seen by a dentist for his yearly check-up. Certain treatments, tests and surgical corrections were recommended but they have not been done.

On July 25, 2014, Plaintiff went to Defendant Tate and asked for an accommodation chrono due to his medical problems. Defendant Tate denied the request. Plaintiff complained of his injuries and pain. Defendant Tate stated he understood his complaints and that proper treatment would require the services of an orthopedic surgeon; however, Tate declined to refer Plaintiff to an orthopedic specialist.

Lastly, Plaintiff makes numerous conclusory claims against the Defendants he named in his original complaint. Plaintiff presents no facts at all in support of his claims.

C.   Conclusion

Plaintiff's Second Amended Complaint completely fails to comply with the Court's

screening order of April 23, 2014. Plaintiff has presented only new and unrelated claims in his amended complaint. Plaintiff was advised that the amended complaint supersedes the original complaint and must be complete in itself. *Forsyth v. Humana, Inc.,* 114 F.3d 1467, 1474 (9th Cir. 1997); Local Rule 220. Plaintiff was further forewarned that attempting to add new and unrelated claims would result in an order striking the amended complaint, and failure to comply could result in dismissal with prejudice for failure to state a claim.

**IV.     Conclusion and Order**

Accordingly, the Second Amended Complaint is hereby STRICKEN. The Court will provide Plaintiff with **one final opportunity** to file an amended complaint curing the deficiencies identified by the Court in its previous order of April 23, 2014. *Noll v. Carlson*, 809 F.2d 1446, 1448-49 (9th Cir. 1987). Plaintiff is again instructed that he may not change the nature of this suit by adding new, unrelated claims in his amended complaint. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). Plaintiff is again advised that an amended complaint supersedes the original complaint, *Forsyth,* 114 F.3d at 1474, and must be "complete in itself without reference to the prior or superseded pleading," Local Rule 220.

Accordingly, it is HEREBY ORDERED that:

1.     The Clerk's Office shall send Plaintiff a complaint form;

2.     Plaintiff's Second Amended Complaint is STRICKEN;

3.     Plaintiff is GRANTED leave to file a Third Amended Complaint within thirty (30) days from the date of service of this order. Plaintiff may not add any new, unrelated claims to this action via the first amended complaint and any attempt to do so may result in an order striking the first amended complaint. If Plaintiff fails to file an amended complaint in compliance with this order, this action will be dismissed, with prejudice, for failure to state a claim.

IT IS SO ORDERED.

Dated:     **September 15, 2015**                         /s/ *Dennis L. Beck*
                                                                                    UNITED STATES MAGISTRATE JUDGE